The first case this morning is Honeywell Intl v. ITT Industries. Mr. Bagatel. Thank you, your honor. May it please the court, Dan Bagatel on behalf of the Honeywell appellants. The main issue on this appeal is whether the district will adhere to limiting the claimed fuel injection system component to a particular kind of fuel injection system component, namely a fuel filter. We submit that it did, and that in any event, at the very least, Honeywell should have been permitted to pursue its claim under the doctrine of equivalence. Why do you think the district court erred in limiting your claims to a fuel filter when the patent draftsman did? He started out by saying this invention relates to a fuel filter. Further on, he says, according to the present invention, a fuel filter. So what's wrong with what the district court did when that's what the patent draftsman did? Okay, your honor. First of all, let's start out with the claim language, because everyone agreed below on one thing, and that is that those skilled in the art understand the claim term fuel injection system component as generic, and that's something that comprehends more than just fuel filters. And in fact, that's an ordinary English term that has no specialized meaning. So because the ordinary meaning is plain and clear, you have to find clear evidence in the specification or the prosecution history to overcome it, and we submit that there isn't any. Didn't I just read it? Let me go right to that, your honor, because what we're talking about is the specification and its use of the term component. Of course, you could point out other components in the specification. Yes, your honor. In fact, the specification specifically refers to both fuel lines and fuel filters as components. Moreover, in the abstract, it refers to components generally. And in fact, the prosecution history makes clear that the applicants in the examiner were trying to clarify that the 879 patent scope was broader than simply the fuel filters that were covered in the other two claims. Excuse me. Go ahead. I'm just saying there's no language in the specification with respect to these other components suggesting that they're covered by the invention. Well, your honor, I believe there is. First of all, I've mentioned both the abstract and the background of the invention where they discuss that both fuel filters and fuel lines are components. But later on in the specification, it refers to the problem of electrostatic charge buildup as occurring in both fuel filters and fuel lines. Now, of course, the degree is higher than in fuel filters. Where's that language? That, your honor, is in, I believe, column three. It is at column two between lines 40 and 47. And it indicates that although some electrical charge generated occurs in the fuel lines upstream and downstream due to stripping of electrons, due to friction between the fuel and the walls of the fuel line, the charge generation in the fuel filter is of a greater degree. And that's why the problem was discovered in the context of fuel filters. But the claims were not so limited. In fact, that language in column two could suggest that the focus of the invention is on the fuel filter because that's where the big problem is. And there's no reference to any other particular component that would be a problem, right? Well, I don't agree with that, your honor. I think what they're describing here is saying this is where the problem has been the greatest. But the claims were addressed more generically to the overall solution, which is incorporating electrically conductive fibers into the housing of a fuel system component. And that's what we have here in the accused products. They are incorporating electrically conductive fibers into the plastic housing to allow electrostatic charge to dissipate to ground. Now, I want to address the two points that your honor made about relates to and according to the present invention. The language does say this invention relates to a fuel filter, but it doesn't say that this invention is restricted to a fuel filter. What they're saying is that it relates generally to, and it does, the problem was discovered in the context of fuel filters. One might substitute the word is. I don't think is and relates are equal. We don't have to discuss the meaning of what is is. That's true, your honor. That's definitely true. But they did use the word relates to, and that's just a general statement that the invention is in the area of fuel filters. It is not the kind of clear restriction that this court's case is required in order to limit broad claim language such as we have here. It did also say that according to the present invention and pursuant to the teachings of the present invention, we built a fuel filter. But those are classic words to introduce an embodiment. They're not language that's used. The invention has a polymer. I mean, the invention isn't fuel filters or components. It involves having a polymer with electrically conductive fibers. Right. Now you mentioned the presence of other components, and I think Judge Dyke touched on this. Where does it indicate that these other components have this composite material consisting of a polymer with electrically conductive fibers? The discussion of the fuel line as a component was in a discussion of the prior art. However, the description of the invention as a whole, the embodiment that is given is the fuel filter. But they were using that as an illustration of the overall principle of the invention. In fact, I think the language pursuant to the teachings of the present invention indicates that the present invention is broader than simply the fuel filter that they're disclosing here. And moreover, the prosecution history here, Your Honor, is absolutely clear. Both the examiner and the applicant specifically stated that they understood these claims as opposed to the claims of the sister patent to cover more than simply fuel filters. In fact, that was clear from the beginning because there were three classes of claims, but the two that are most relevant here are the ones addressed to fuel filters per se, and then the claims that were addressed to fuel system components, originally moldable materials for fuel system components. And they were divided out into separate applications precisely because they had different scope. And then the examiner issued a 112 rejection saying, it's not clear which fuel system components you're covering. And the applicants made very clear, we're covering any and all fuel system components. And then after that, the applicants amended their claim to make clear that the scope of the invention was relating to fuel system components and not moldable materials generally. They were distinguishing some art from household appliances. And when they made that amendment, they weren't sure whether to put it into the fuel filter application or the other application. And the examiner said, don't put it into the fuel filter application precisely because that application deals with fuel filters and these claims deal with more than simply fuel filters. And again, they amended both the abstract and the title of the claims to reflect that the scope of this divided patent was broader than the fuel filter claims covered by the other patent. What about the carbon fiber issue? The accused device uses carbon fiber, right? Yes, it does. So I'm wondering whether the district court made an error in not limiting the claims to metallic fibers based on the language of the specification at the bottom of column 3 and the top of column 4. Because those portions of the specification certainly talk about disadvantages of carbon fibers versus metallic fibers. Yes, they do, Your Honor. First of all, again, we have a claim term here that is electrically conductive fibers. The specification makes clear that both carbon and metallic fibers are electrically conductive. That much is very clear from the specification. So, again, the question is, given that the language is so broad, did they do anything to narrow it with clear language? And what they said was— Suppose they had said that carbon fibers are electrically conductive, but they're very undesirable for these reasons. Would that be sufficient to limit the claim to metallic fibers? Not in this context, Your Honor. And that's— Why is that? For two reasons. First of all, here what they were saying is we specify stainless steel fibers because it has certain advantages. Moreover, you have to look at the claims. Claim 1 is very general. It discusses electrically conductive fibers very generally. There are dependent claims that go into stainless steel fibers. It goes into the aspect ratio. It goes into the weight of the fibers. Those dependent claims were the ones that were addressed to the more specific preferred environment. Yeah, but I don't think anyone is suggesting it's limited to stainless steel fibers. The question is whether it's limited to metallic fibers because the specification is very clear that other metallic fibers can be used. Yes. So I don't think you get that much out of the dependent claims referenced to stainless steel fibers. But my question is where you have a sort of general verb which might encompass carbon and metal, but the specification says that it's very undesirable to use carbon and that metal doesn't have those disadvantages, why isn't that sufficient to limit the claim language to metallic fibers? It depends on what the specification says. If the specification says it's an important aspect of the invention or a critical aspect of the invention, I might agree with you. If it simply says we specified it because metal fibers or stainless steel fibers have these advantages, I don't think that's the clear language. Again, you're dealing with something where you have very broad language that the plain meaning of it and the customary meaning of it is broad enough to include all electrically conductive fibers. I don't think simply saying that this one is preferred or this one has advantages is a restriction to that claim language. If that were the case, virtually any time you'd have a single disclosed embodiment, the claims would be so limited, and that's clearly contrary to the specification. Well, it goes beyond saying that stainless steel fibers are preferred. It actually says that carbon fibers have disadvantages, right? Yes, it does. But any time you cite advantages and disadvantages, you're describing the best mode. That's inherent in the nature of a description of the product that you identify as the best mode. It's not necessarily a limitation on the scope of the claims, and we submit that Claim 1 was broadly addressed to all electrically conductive fibers. Do you want to save it? I would like to save it, and I'd be happy to address the doctrine of equivalence on the rebuttal. Well, we won't be getting into it. You didn't discuss it here. You didn't discuss it here. I'll defer to rebuttal. If you prefer, if you'd like me to address it here. No, what I'm saying is you didn't bring it up, so we won't be hearing it. Okay. Well, then, Your Honor, unless you want to use your rebuttal time and talk about it. Well, let me briefly just discuss the doctrine of equivalence then, if I may, Your Honor, because we believe that even if the district court correctly construed the claim term fuel injection system component, we should have been allowed to pursue a doctrine of equivalence argument. And that's because we have exactly the same function pursued in the same way to achieve the same result. The district court's logic was the disclosure dedication rule, but neither of these sets of appellees have tried to defend that. Instead, they rely on the fact that a fuel system connector does not contain fuel filtering elements. You know, we have all of this in the briefs. Do you want to save some rebuttal time? Yes, I would, Your Honor. You're saying exactly what we read. Thank you, Your Honor. Mr. Young? Good morning. Tom Young representing the ITT defendants, and I'm sharing my time with Mr. Sulzer this morning. And I will take direction from the court's questions to Mr. Bagatelle. At the trial level, the Honeywell's attorneys, not Mr. Bagatelle, but his predecessors, were deeply into ordinary meaning. The Phillips case came out immediately after Judge Cohn entered his opinion. You'd think he had read it before he wrote his opinion, but the truth of the matter is I believe it came out immediately afterwards. But the Phillips decision really changes the landscape radically. You have a bit of a problem here in the sense that the claim language itself isn't limited to fuel filters. You've agreed to that. And if we were to conclude that the specifications were ambiguous, the clarity of the prosecution history would suggest that it's broader than the filter, right? Well, I would have to disagree with that. First of all, I don't think the specification is ambiguous. No, but just hypothetically. I understand that. But hypothetically assume that we were to conclude that the specifications were ambiguous. You'd lose, right, because the prosecution history is so clear that they intended to be broader. First of all, I think it would take us into the realm of athletic alternatives where you have two possible meanings, one broad, one narrow, and we would then want to look to which one carries out the notice function. Clearly, it supports fuel filters. The specification supports fuel filters. If it's ambiguous as to anything else, I think the law— But you're not answering my question. My question is hypothetical. I understand that you think the specification isn't ambiguous, that it's very clear in a way. Right. But I'm asking you to assume that we reject that. I know you don't want us to, but just assume we do reject that. You don't have any other basis for eliminating it to fuel filters because of the clarity of the prosecution history, right? The prosecution history, first of all, we're looking only at the October 1991 amendment, at which time you have an attorney making a sea change in the subject matter which is claimed and attempting to make a sea change in the scope of a term which prior to that was never explained. Now, the question I think that raises is where do we get the meaning of a claim term, from the original specification and how a person of ordinary skill would read it or from the comments made by an attorney uncorroborated, unratified by any input from the inventors themselves. And I think where we come to rest is that an attorney's argument is not a written description. And I think that's where we are in this case. But I want to point out one thing, and that is that there is language in the claims themselves that's consistent with the appellee's position in the case. When the application was originally filed, it had three sets of claims, and the first two were specific to fuel filters, no question about it. But interestingly enough, they talked about the fact that the fuel filter was in the lines running to the engine. Now, fuel injection systems are recirculating systems. And that's the basis for the entire problem here. That's the whole reason why the patentee has argued that this invention is peculiar to fuel injection systems because there's a higher flow rate at low load conditions. Ninety-some percent of the fuel that is delivered to the engine goes back to the tank, and it continues to recirculate. Now, in the original claims that were filed, even the material claims, the ones that use the component language, as well as in the present claim, you find the limitation to the engine. It locates this component in the lines running to the engine. Now, you have to ask yourself, why would an attorney attempting to cover all components, including those which are found in equal number in lines going back to the fuel tank, put that limitation not only in the claims that we have in the issued patent, but in the original claims as filed? His intent was obviously to limit it to some component, the only component as far as I know, that's found only in the lines going to the engine, and that's a filter. Filters are uniquely located in the lines going to the engine. Judge Dyke has pointed to the weakness in your case in that the claim says component, the title says component, the applicant's argument said we intend to cover components. Isn't your answer that notwithstanding all of that, the specification which is supposed to describe the invention doesn't describe components except for the filter and says my invention is the filter? Isn't that your answer? Yes. But notwithstanding that broad term in the claim, it isn't supported by the specification. That's correct. That's certainly my strongest argument. It simply doesn't support it. I thought so. Yeah. It simply doesn't support it. It's really your only argument, in fact. Well, I believe I'm correct in saying that the attorney's arguments with respect to his opinion on the scope of the claim do not constitute a written description. They do not satisfy section 112. You think in contrast to a retreat? Absolutely. Absolutely. You can narrow claims as far as to stop it. A retreat is a surrender, but a broader interpretation is what? Puffery in an attempt to get as much as you can. But you run into the written description problem. You can't substitute your attorney's opinion about what he thinks a claim ought to cover. You can't use that as a substitute for a written description. The statutory requirement is still there staring you in the face. But furthermore, the language in this patent dealing with components other than fuel filters is only language talking about fuel lines, and it is language of exclusion. It says fuel lines don't use this invention. Fuel lines are not implicated in the problem that this invention addresses. And I have used my time by pre-agreement with Mr. Seltzer. I will give way to him. Thank you. Good morning, Your Honor. Stephen Seltzer speaking on behalf of the appellees T.G. North America, T.G. Fluid Systems U.S.A. and A-Rank Incorporated. I'd like to begin by going straight to Judge Dyke's question, to Mr. Young, and to Judge Lurie's question about the specification versus the prosecution history. While I would agree that the specification is very clear in the direction that it points, it discloses just a fuel filter and no other component, the prosecution history here by no means is as monolithic as Honeywell would suggest. And I have a demonstrative exhibit up on the board, which is an October 1990 IDS. This is a document that was filed in the parent application, and a global statement is made right out of the gate during prosecution that the above-identified application relates to a fuel filter for an automotive vehicle, not any fuel system component. Now, that's prosecution history, not the original specification. In fact, it's the first document in the prosecution history after the parent application is filed. The second sentence in this IDS says, A pre-filing novelty search did not discover any prior art relating to charge buildup in fuel filters. The import, the natural interpretation of this document by persons skilled in the art, is that Honeywell believes, the applicant believes, that the invention here described in this patent application is a fuel filter, and their pre-filing novelty search didn't disclose any fuel filter art, ergo, please allow the claims. The last sentence of this IDS says that the 303 patent to Thorne is pertinent, meaning we have to cite it under the rules of candor of the patent office, but it does not deal with control of electrostatic charge buildup in fuel filters, but only in another vehicle system component, meaning our invention is a fuel filter. The Thorne patent doesn't deal with a fuel filter. It deals with something else. Please allow our claims. So, what we have here at best for Honeywell is not a monolithic prosecution history, all of which says the invention is any component over and over and over again. Rather, the first thing out of the box is the invention is a fuel filter. You're saying it's a surrender of what they were arguing at another time. Very much so, Your Honor. They began to argue for a broader scope of claims when they realized that they could not get the moldable material claims allowed in the divisional of the parent application. When the examiner issued a restriction requirement, one of the divisionals, the one that led to the 879 patent ensued, had in it the moldable material claims, and when the applicant faced a rejection over the art as to the moldable material claims over the Wakata and Soane's patents, they came back with the component limitation. The examiner asked, I believe, in more than one of these divisionals or suggested that perhaps the scope of the word component could be broader than just a fuel filter, and the applicant came back and said, yes, we think we can cover any fuel system component. But that was the creative patent lawyering that Mr. Young was alluding to without any continuation in part, without any supplemental oath, without anything from the applicants to say, our invention is broader than a fuel filter. You have counsel arguing for a broader claim scope and submitting a broader claim scope. But you know, this issue came up in prosecution, didn't it, in the 112 objection, and it was responded to. And the examiner acquiesced. And I believe, Your Honor, that that is why in the Biogen versus Burlex Laboratories case this court commented that you cannot enlarge the scope of the specification, the written description of the invention, either by the examiner's subjective intent or the end results of the prosecution or by the applicant's subjective intent and argumentation. Yeah, but you could clarify an ambiguity, right? Yes, but I... So I come back to the question that if we were to conclude that the specification written description is ambiguous, you could look to the prosecution history to clarify that ambiguity. Agreed, Your Honor. And the first thing that you would come to in this prosecution history is the October 1990 IDS, which again states unequivocally our invention globally is a fuel filter, and we're going to distinguish at the prior art other fuel system components like the fuel intake in that foreign patent as not being a fuel filter. Now, what that sets up is a conflict in the prosecution history. The original statement here in this IDS is that it's narrow, it's just a fuel filter. The later statements that we've been discussing would suggest that it could be broader, any fuel system component. Athletic alternatives and houses cited in our briefs and subsequent decisions from the Federal Circuit state consistently when you have two conflicting and irreconcilable recitations in the prosecution history about what the claim scope can be as a matter of public notice and fundamental fairness to make the intrinsic record maximally transparent and usable to the public to determine claim scope. The narrower statement, the narrowing statement trumps or controls over the broadening statement. This IDS is in relation to this patent rather than one of the others? It is in relation to the parent application. And if you'll note, the first sentence says the above identified application. Now, that application had all three of the original groups of claims in there, the moldable material claims, the method of producing electrostatic charge in a fuel filter, and the fuel filter claims. This is a division of the early ones, so the specifications are the same? The specifications are the same in all of these patents. Well, except that this specification was amended, right? Well, there was amendment, Your Honor, to the abstract. The title also, right? Yes, although the titles went back and forth, I believe, and the last issued title, I think, says fuel filter in the reexamination proceedings. This demonstrative Exhibit 1 that we're putting up right now is one of the items that was amended in the 879 as issued. This is the abstract. You can see in the parent, the abstract said a fuel filter for a motor vehicle, not any fuel system component, and again, it says the same thing. Now, it's overwritten. This is the 240 divisional that led to the patent suit. I'm always amazed that you guys expect us to be able to read type of that. I'm sorry, Your Honor. I thought that you would have a book with you. We submitted individual 8.5x11s for you to be able to read. We do have them here, but you need to tell us what you're showing them. It's demonstrative Exhibit 1 in that collection that you have on the bench, Your Honor. The alternative is when you come and argue to give us all binoculars. We wrestled with how big to blow these things up, and it reached a point of absurdity after a while. I also would like to turn, Your Honor, to the notion of whether the Doctrine of Equivalence applies at all here. If there could be any debate at all about whether the specification is a clear enough disavowal to bar access to the Doctrine of Equivalence, I submit that this October 1990 IBS Exhibit 2 that we showed you moments ago is prosecution history estoppel writ large, and thereby bars efforts to expand the scope of the claims beyond a fuel filter. And what would the accused be equivalent to? To the component in the claim? I submit, Your Honor, that once Judge Cohn construed the word component in the claim to be a fuel filter, the equivalence would have to be with respect to a fuel filter. Otherwise, you'd be vitiating claim limitations, which, of course, is prohibited by cases like Sage Products. And I think you'll find the fourth limitation of the claim was added by amendment, and therefore also sets up a prosecution history estoppel. All right. Thank you. I'd like to turn first, Your Honors, to Exhibit 2, the first exhibit that was up there. It's number 2 in your package. Well, now you have something to respond to on equivalence. Yes, sir. If you wanted to. I will, and I will get there in just one second. But I want to point out about the component language there. Mr. Sulzer is correct that the original claims included claims directed to moldable materials for fuel system components. All of those claims were in the original application. So the term component was in the original application. That invention disclosure statement actually confirms that a component is broader than a fuel filter because the Thorne patent actually related to a fuel inlet piece. It did not deal with a fuel filter, yet they specifically referred to it as a component. No one's questioning that the word component is broader than the fuel filter. Correct. And the applicants understood that and intended that from the beginning, contrary to what Mr. Sulzer was suggesting, because it's very clear from there that they were indicating that the art was relevant. They were not saying it was irrelevant. They were saying the art was relevant and that that fuel inlet piece was actually a component. So that supports the prosecution history argument. Is this language in the IDS? Yes, it is, Your Honor. It's that very last sentence that says it discusses control of electrostatic discharges in another vehicle system component. And that component in that patent was not a fuel filter. So that confirms that from the very beginning, both the claims and the applicant's intention was to cover more than simply fuel filters. The next argument is whether there was some sea change in the prosecution that limited the claims to fuel filters. That's not the case. In fact, the amendment was narrowing, not broadening. The amendment changed the claims from multiple materials for fuel system components to the fuel system components themselves. And the intent there was very clear. They were trying to limit it to fuel systems and not include household appliances. This is a very strange prosecution because there was a restriction requirement between filter and component. And what was elected? Component? Well, in the original application, they elected fuel filter, but they filed divisional applications. And there were three divisional applications. I think the one that won first was actually a method claim. And which one's this? This one is the third application that originally arose out of the claims saying multiple materials for fuel system components. So those claims have been around there from the beginning. These were not added during the prosecution history. They were narrowed during the prosecution history. So what we have here is no conflict at all. What we have is broad claim language that's fully supported by the prosecution history. And I would submit no words of manifest exclusion or restriction that clearly restrict it in the specification. In my last few seconds, I do want to address the doctrine of equivalence. And I don't believe there's any vitiation here simply because there's nothing in the claims that relates to fuel filtering. What it deals with is the housing and the inclusion of electrically conducted fibers in the housing. And in this case, we have the same electrically conducted fibers molded through a different piece of hollow plastic, accomplishing the same result. There's no vitiation because the filtering is not the relevant aspect of the claims. And the Supreme Court made that clear in Graver Tank that what you look at is not the word in the abstract but the purpose in the claims. And the last limitation simply is reflexive. No vitiation anyway because nothing is missing. It's just a question of what something that's there means. In our view, that's the claim construction issue. Even if we lose the claim construction issue, even if the term component is restricted to mean fuel filter, there's nothing in the word component that requires the filtering aspect of a fuel filter. Thank you. Thank you very much. The case is submitted.